UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RONALD BARKER,

                      Plaintiff,

          - against -

ARAMARK UNIFORM & CAREER
APPAREL, LLC,

                      Defendant.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-2710 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

      Plaintiff Ronald Barker, proceeding *pro se*, brings this action against his former employer, Defendant Aramark Uniform & Career Apparel, LLC ("Aramark"), alleging violations of 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Administrative Code §§ 8-101 *et seq.* and § 8-107(15) ("NYCHRL").  Before the Court is Defendant's motion for summary judgment.  For the reasons discussed below, the Court grants in part and denies in part the motion for summary judgment, and grants the parties leave to take limited discovery.

1

# BACKGROUND[1]

## I. Plaintiff's Experience at Aramark

Plaintiff began working for Defendant, an industrial laundry and uniform rental business, in 2015 as a "route salesman/ truck driver." (Complaint ("Compl."), Dkt. 1, at ECF[2] 12, 71.)[3] In the summer of 2016, Defendant restructured its drivers' routes. (*Id.* at ECF 69.) According to Plaintiff, the purpose of the restructuring was to "level the playing field" because white drivers were at the time being paid more than Black drivers. (*Id.* at ECF 71.) The white drivers protested the restructuring and filed an (ultimately unsuccessful) grievance with the Laundry, Distribution & Food Service Joint Board, Workers United Union (the "Union"), which has a collective bargaining agreement ("CBA") with Defendant. (*Id.* at ECF 14; *see also id.* at ECF 45.) Plaintiff also alleges that his co-workers were upset that he, a Black man, was assigned stops on Long Island. (*Id.* at ECF 71.)

---

[1] Because of the limited nature of this summary judgment motion, no discovery has yet been taken and the parties have not yet submitted Rule 56.1 statements. The Court cites to the complaint to establish certain background information not material to this motion, but notes that the allegations described therein remain allegations rather than undisputed facts.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] Plaintiff's complaint in this action consists of the Court's standard *pro se* complaint form and 228 pages of attached exhibits, which include, *inter alia*, Plaintiff's original New York State Division of Human Rights ("NYSDHR") complaint and the NYSDHR's Final Investigation Report and Basis of Determination. Plaintiff did not include a separate statement of facts with his complaint, but instead wrote "see attached files from New York State Division of Human Rights." (*See* Compl., Dkt. 1, at ECF 5.) Accordingly, in describing the allegations in the Complaint, the Court draws from Plaintiff's NYSDHR complaint and the NYSDHR's Final Investigation Report. *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit or is incorporated in it by reference.") (internal quotation marks and citations omitted).

After the reorganization, a white driver, Brian Calhoun, complained about the re-routing to Dave Gambardella, an Aramark manager. (*Id.*)  Gambardella gave some of Plaintiff's stops to Calhoun. (*Id.* at ECF 71.)  When Plaintiff approached Gambardella about his stops, Gambardella stated, "this is how we look after our own," and then employed "stereotypical 'Black phrases,'" such as "you know what I'm saying homie?" (*Id.*)

Plaintiff also raised the stop-reassignment issue with Defendant's assistant general manager and general manager, but they similarly refused to act. (*Id.*)  Plaintiff then attempted to lodge a grievance with the Union, but the filing was delayed because Calhoun, the white driver who had received Plaintiff's stops, was the assistant shop steward responsible for filing grievances at Aramark and did not file Plaintiff's grievance. (*Id.*)  Eventually, Plaintiff filed his grievance by contacting a union representative directly. (*Id.*)  Plaintiff eventually left his job in late summer 2017. (*Id.* at ECF 71.)

## II.     Plaintiff's NYSDHR Complaint

On January 24, 2018, Plaintiff filed a Verified Complaint with the NYSDHR charging Defendant "with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the [NYSHRL] because of race/color." (*Id.* at ECF 10, 12.)

As part of its investigation, the NYSDHR interviewed Plaintiff, as well as two witnesses identified by Plaintiff, both of whom had heard the manager Dave Gambardella make "racially charged derogatory comments" toward Black people on multiple occasions. (*Id.* at ECF 72.)  The parties also engaged in briefing. (*See id.* at ECF 16–32.)  Plaintiff supplemented the allegations in his NYSDHR Complaint in his April 22, 2018 reply to Defendant's response, claiming, *inter alia*, that in addition to changing his stops, Defendant had not properly compensated him, because it failed to pay him the "loss and ruin" ("L&R") pay he was owed from August to November 2016. (*Id.* at ECF 31, 71).

3

On July 24, 2018, the NYSDHR issued its Determination After Investigation, in which it found "probable cause" to proceed on Plaintiff's NYSDHR Complaint. (*Id.* at ECF 72.) The case was calendared for a pre-hearing settlement conference in front of an NYSDHR Administrative Law Judge. (*Id.* at ECF 75.)

### III. The Settlement Agreement

The parties began settlement talks in September 2018, after the NYSDHR issued its Determination. (Declaration of Steven M. Friedman ("Friedman Decl."), Dkt. 31, at ECF 3 ¶ 11.)[4] Plaintiff was not represented by counsel at first, but then retained counsel in February 2019. (*Id.* ¶ 14.) On April 8, 2019, Plaintiff entered into a settlement agreement with Defendant (the "Settlement Agreement"). (*See id.* ¶ 17; Settlement Agreement, Dkt. 31, at ECF 49–55.) Plaintiff signed the Settlement Agreement while on a conference call "with Aramark's attorney's [sic] Michael Fleming and Melissa Rodriguez, along with [his] attorney Stephen James[.]" (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp"), Dkt. 24, at 1.)[5]

The signed Settlement Agreement contained, *inter alia*, the following provisions:

> WHEREAS, Barker filed a verified complaint with the New York State Division of Human Rights (the "SDHR"), captioned *New York State Division of Human Rights on the Complaint of Ronald Barker v. Aramark Uniform & Career Apparel, LLC*, Case No. 10193046, for alleged unpaid wages and/or commissions and unlawful discriminatory practices relating to his employment with Aramark ("SDHR Proceeding");
>
> . . .

---

[4] Plaintiff disputes several factual representations made in the Friedman Declaration (*see* Pl.'s Opp., Dkt. 24, at 3), but the disputed facts are neither listed herein nor material to the instant motion.

[5] "While the Court ordinarily may not consider factual allegations contained in opposition papers to a motion to dismiss, a number of courts have done just that where the *pro se* plaintiff's new allegations are consistent with those contained in his complaint." *Monroe v. Myskowsky*, No. 12-CV-5513 (KPF), 2014 WL 496872, at *4 (S.D.N.Y. Feb. 6, 2014) (internal citation omitted) (collecting cases). Given the limited nature of the summary judgment motion at issue, the Court applies the same principle to Plaintiff's papers here.

4

> WHEREAS, Barker expressly reserves any rights he may have to pursue any claims of racial discrimination and related issues not addressed within the purview and jurisdiction of the SDHR Public Hearing that is scheduled for 4/10 and 4/11/2019, before the Division. Additionally, this agreement does not in any way, preclude or inhibit Barker from pursuing whatever remedies that may be available to him in Federal Court, regarding said claims not addressed in the SDHR Hearing;
>
> WHEREAS, Barker intends to fully pursue his arbitration case currently pending regarding his complaints against Aramark not addressed within the purview and jurisdiction of the SDHR and by signing this agreement, Barker, in no way, intends to waive or forfeit any remedies sought pursuant to said arbitration proceedings not addressed in the SDHR Hearing.
>
> WHEREAS, Barker is represented by Stephen G. James, Esq., and Barker represents that he is satisfied that his counsel has used best efforts to pursue and resolve the disputes in a manner that is fair to his interests. Barker represents that he has discussed all aspects of his claims and allegations and this Agreement with his counsel, has been fully advised by his counsel as to his rights, understands that he is waiving significant legal rights by signing this Agreement, and enters into this Agreement voluntarily, with a full understanding of the Agreement and all of its terms.
>
> . . .
>
> WAIVER & RELEASE. Barker waives and releases any and all claims and allegations asserted in the SDHR Proceeding against the Company and all of its parent, subsidiary and affiliated companies or entities, including the entities listed in Exhibit 21.1 to Aramark's 2017 United States Securities and Exchange Commission Form 10-K filing, and all of their past and present officers, directors, employees, agents and assigns (collectively, "Releasees"), including but not limited to Aramark American Food Services, Inc., Aramark Food and Support Services Group, Inc., and Aramark School Support Services, LLC, d/b/a Aramark Schools, LLC, arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York including, but not limited to the New York State Executive Law, including its Human Rights Law, the New York State Civil Rights Law, the New York State Wage Payment Laws, the New York State Equal Rights Law, the New York State Equal Pay Law, the retaliation provisions of the New York State Workers' Compensation and Disability Benefits Laws, the New York State Labor Law and any applicable Wage Orders, the New York Occupational Safety and Health Laws, all as amended.

(Settlement Agreement, Dkt. 31, at ECF 49–50.)

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████

On April 5, 2019, the parties jointly submitted a withdrawal letter to the NYSDHR, containing a letter from Plaintiff withdrawing his claims because they were addressed by private settlement. (Withdrawal Letters, Dkt. 31, at ECF 57–58.) On April 16, 2019, the NYSDHR Commissioner consented to the dismissal of the NYSDHR complaint with prejudice. (Dkt. 33, at ECF 8–10.)

## IV. The Instant Case

Shortly before the Settlement Agreement was finalized, Plaintiff received a "Right to Sue" letter from the EEOC, dated February 14, 2019. (*See* EEOC Letter, Exhibit B to Pl.'s Opp., Dkt. 24-2, at 2.) Plaintiff commenced this action on May 8, 2019. (*See* Compl., Dkt. 1, at ECF 7.) On July 26, 2019, Defendant requested a pre-motion conference in advance of a motion to dismiss arguing, *inter alia*, that Plaintiff's suit was barred by the Settlement Agreement. (*See* Dkt. 10.) The Court held a conference on August 21, 2019, at which it instructed Defendant to file a motion for partial summary judgment rather than a motion to dismiss to the extent it moved on the basis of the Settlement Agreement. The Court stayed briefing on the motion while a parallel arbitration process took place, and lifted the stay after the arbitrator rendered his decision.[6] (*See* Nov. 6, 2019 Dkt. Order.) The instant motion was fully briefed on January 31, 2020.[7] (*See* Dkt. 27.)

---

[6] The arbitration case was brought by the Union against Defendant, and sought L&R commissions. (Dkt. 31, at ECF 62–67.) A hearing on the grievance was held on October 3, 2019 (*see* Friedman Decl., Dkt. 31, ECF 4 ¶ 19), and on October 10, 2019, the Arbitrator issued a decision dismissing the grievance based on the Settlement Agreement (*see* Dkt. 31, at ECF 65–66 ("On balance, I am persuaded that the Settlement effective[ly] moots the grievance.").)

[7] Though not provided for in the briefing schedule set by the Court on December 6, 2019 (*see* Dec. 6, 2019 Order), Plaintiff filed a response to Defendant's reply on February 5, 2020. (*See*

**LEGAL STANDARD**

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law"). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010). Once this burden is met, however, the burden shifts to the non-moving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial. *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotation omitted and alteration in original). In other words, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quotation and citation omitted). In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir.

---

Dkt. 34.) Because of the "special solicitude" due *pro se* plaintiffs, *see Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019), the Court considers Plaintiff's sur-reply submission, along with his response to Defendant's motion.

2008). The Court also construes any disputed facts in the light most favorable to the non-moving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

## DISCUSSION

Defendant contends that Plaintiff's claims are covered by the release in the parties' Settlement Agreement, and that his release of those claims was knowing and voluntary. (*See* Defendant's Motion for Summary Judgment ("MSJ"), Dkt. 30, at 11–12.) Plaintiff does not dispute that he "knowingly and voluntarily" released his claims for "compensatory commission, loss wages, and back pay" as part of the Settlement Agreement (*see* Pl.'s Opp., Dkt. 24, at 5), but claims that the release does not extend to his claims for "[f]ederal discrimination Title VII issues" (*id.* at 1). For the reasons that follow, the Court grants Defendant's motion as to Plaintiff's NYSHRL, NYCHRL, and his Section 1981 claim. However, the Court denies Defendant's motion, without prejudice to renew after discovery, as to the punitive damages portion of Plaintiff's Title VII claims.

**I.    Release of Claims**

"It is well established that settlement agreements are contracts and must therefore be construed according to general principles of contract law."[8] *Dechberry v. N.Y.C. Fire Dep't*, 124 F. Supp. 3d 131, 141 (E.D.N.Y. 2015) (citing, *inter alia*, *Collins v. Harrison–Bode,* 303 F.3d 429, 433 (2d Cir. 2002)). "Courts in this Circuit have consistently barred claims where a plaintiff enters

---

[8] The choice of law paragraph in the Settlement Agreement provides that "any dispute arising under this Agreement, or related in any way to the term of same, shall be governed by the laws of the State of New York, without regard to choice of law principles." (Settlement Agreement, Dkt. 31, at ECF 54.) The Court therefore applies New York contract law in interpreting the Settlement Agreement.

8

into a settlement, executes a general release, and then brings an additional lawsuit alleging similar claims that could have been alleged in the prior settled action." *Id.* at 142 (collecting cases); *see also Tromp v. City of New York*, 465 F. App'x 50, 52 (2d Cir. 2012) (summary order) ("Words of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies.") (citation omitted). "General releases usually cover all claims and demands due at the time of execution unless specified rights or claims are excluded." *Spanski Enters., Inc. v. Telewizja Polska, S.A.*, No. 10-CV-4933 (ALC) (GWG), 2013 WL 81263, at *4 (S.D.N.Y. Jan. 8, 2013) (collecting cases). "When general language is used in the releasing document, the release is to be construed most strongly against the releasor." *Smickle v. City of New York*, No. 16-CV-3333 (VSB), 2018 WL 1578381, at *3 (S.D.N.Y. Mar. 29, 2018) (citation omitted).

> Here, the release clause at issue provides that:
>
> [Plaintiff] waives and releases any and all claims and allegations asserted in the SDHR Proceeding against the Company and all of its parent, subsidiary and affiliated companies or entities . . . arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York[.]

(Settlement Agreement, Dkt. 31, at ECF 50.) Defendant claims that this provision of the Settlement Agreement is a "general release" and unambiguous (*see* Defendant's Reply Memorandum in Support of Summary Judgment ("Def.'s Rep."), Dkt. 32, at 1–3), and that it bars the instant suit because Plaintiff's claims and allegations in this matter are the same, but for their statutory basis, as those asserted in the NYSDHR Proceeding (MSJ, Dkt. 30, at 14). Plaintiff contends that while the factual predicate for his instant complaint is the same as in the NYSDHR

9

proceeding, he now brings different claims.[9] (*See* Pl's Resp., Dkt. 24, at 1 ("In the SDHR proceedings I asserted and expected compensatory damages for unpaid wages, commissions and L&R. . . I inten[d]ed to reserve my rights to pursue the discrimination claim in Federal court under Title VII.").)

Where a settlement agreement accompanies a dismissal, "the preclusive effect of the settlement is measured by the intent of the parties to the settlement." *Berrios v. State Univ. of N.Y. at Stony Brook,* 518 F. Supp. 2d 409 (E.D.N.Y. 2007) (citing, *inter alia*, *Greenberg v. Bd. of Governors,* 968 F.2d 164, 168 (2d Cir. 1992)); *see also Tromp*, 465 F. App'x at 51 ("Where the language of a release is clear, effect must be given to the intent of the parties as indicated by the language employed.") (internal quotation marks, alterations, and citation omitted). "Under New York law . . . the initial question for the court on a motion for summary judgment with respect to a contract claim is whether the contract is unambiguous with respect to the question disputed by the parties." *Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 465 (2d Cir. 2010) (internal quotation marks and citation omitted); *see also Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013) ("[A] motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning.") (quoting *Am. Home. Assur. Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 316 (2d Cir. 2006)). Language in a contract is ambiguous "if it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire

---

[9] Plaintiff at turns refers to the agreement as unambiguous and ambiguous (*see* Pl.'s Opp, Dkt. 24, at 1, 4) but insists that the waiver does not apply to his Title VII claims, which he claims are explicitly reserved by the recital clause "expressly reserv[ing] any rights he may have to pursue any claims of racial discrimination and related issues not addressed within the purview and jurisdiction of the SDHR Public Hearing" (Settlement Agreement, Dkt. 31, at ECF 49; *see* Pl.'s Opp, Dkt. 24, at 4). Given this disagreement over the interpretation of the Settlement Agreement, the Court interprets Plaintiff as arguing that the agreement is ambiguous.

integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Nippon Yusen Kaisha*, 977 F. Supp. 2d at 349 (internal quotation marks and citation omitted). "The matter of whether the contract is ambiguous is a question of law for the court." *Law Debenture Tr. Co*, 595 F.3d at 465 (collecting cases).

In light of the parties' differing interpretations of the waiver at issue, it is left to the Court to determine whether "all claims and allegations asserted in the SDHR Proceeding" is "unambiguous and conveys a definite meaning." *See Nippon Yusen Kaisha*, 977 F. Supp. 2d at 349. Generally, "it is th[e] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which the plaintiff chose to frame [his] complaint." *Morales v. N.Y.C. Dep't of Educ.*, 808 F. App'x 35, 37 (2d Cir. 2020) (summary order) (quoting *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39–40 (2d Cir. 1992)). Question preclusion based on claim identity and similarity, as Defendant aptly notes, may be understood through the largely analogous doctrine of *res judicata*. (MSJ, Dkt. 30, at 14.) "Under both New York law and federal law, the doctrine of *res judicata,* or claim preclusion, provides that '[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.'" *McCloud v. Mairs*, No. 12-CV-2556 (SLT) (LB), 2014 WL 9880043, at *6 (E.D.N.Y. Oct. 24, 2014) (quoting *Maharaj v. BankAmerica Corp.* 128 F.3d 94, 97 (2d Cir. 1997)), *report and recommendation adopted*, 2015 WL 3607565 (E.D.N.Y. June 2, 2015). "[A] dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 287 (2d Cir. 2002). However, "*[r]es judicata* will generally not apply where the initial forum did not have the power to award the full measure of relief sought in the later litigation." *Monclova v. City of New York*, No. 13-CV-7261

(KAM) (ST), 2017 WL 5495804, at *15 (E.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted) (citing *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)), *aff'd*, 726 F. App'x 83 (2d Cir. 2018); *Barrington v. New York*, 806 F. Supp. 2d 730, 741–42 (S.D.N.Y. 2011) ("With respect to this exception to *res judicata,* the inquiry centers on whether the court had the power to grant the plaintiff the relief sought in the present action.") (internal quotation marks omitted) (quoting *Burgos*, 14 F.3d at 792); *see also Marvel Characters Inc.*, 310 F.3d at 287 (same).

Because Plaintiff's statement of facts in the instant action consists of his NYSDHR file (*see supra* n.2), the factual allegations that form the basis of his complaint are clearly substantively identical to those he asserted in the NYSDHR proceeding.[10]  *Cf. Son v. Greenland Produce & Grocery, Inc.*, No. 11-CV-9533 (PGG), 2013 WL 12084500, at *4 (S.D.N.Y. Mar. 11, 2013), (finding federal and state court complaints "stem[med] from the same set of events and allegations" where, "instead of providing a statement of facts in the [federal] Complaint, [plaintiff] refer[red] to the documents he submitted to the NYSDHR and the NYSDHR's determination, which formed the basis for his state court petition"), *aff'd sub nom. Son v. Lee*, 559 F. App'x 81 (2d Cir. 2014). Though the legal basis for his claims mostly differs—Plaintiff brought his NYSDHR complaint pursuant to the NYSHRL[11] (Compl., Dkt. 1, at ECF 10), and here purports to sue under 42 U.S.C. § 1981, Title VII, and the NYCHRL, in addition to his NYSHRL claim (*see id.* at 3–4)—all but

---

[10] Plaintiff disputes several factual representations made by Defendant in its motion for summary judgment (*see* Pl.'s Opp., Dkt. 24, at 3) but these disputes of fact are not material to the question at issue.

[11] As Defendant notes, when Plaintiff submitted his NYSDHR complaint, he also acknowledged that his complaint would be dual-filed with the United States Equal Employment Opportunity Commission ("EEOC") under the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, and/or the Age Discrimination in Employment Act.  (*See* Compl., Dkt. 1, at ECF 15.)

Plaintiff's Title VII claim for punitive damages, are unambiguously barred by the waiver in the Settlement Agreement.

First, Plaintiff's claims under the NYSHRL are plainly barred, as these are the claims Plaintiff "asserted in the SDHR proceeding" and are explicitly named in the Settlement Agreement.  (*See id.* at ECF 10; Settlement Agreement, Dkt. 31, at ECF 50.)  Second, Plaintiff's NYCHRL claim is also barred because "the election of remedies doctrine under both the [NYSHRL and the NYCHRL] precludes a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." *DuBois v. Macy's Retail Holdings, Inc.*, 533 F. App'x 40, 41 (2d Cir. 2013) (summary order) (subject to certain exceptions not relevant here) (citing N.Y. Exec. Law § 297(9) and N.Y.C. Admin. Code § 8–502)); *see also Szewczyk v. City of New York*, No. 17-CV-1884 (MKB), 2018 WL 4688946, at *5 (E.D.N.Y. Sept. 28, 2018) (collecting cases).  Third, Plaintiff's Section 1981 claims are barred pursuant to *res judicata* by the NYSDHR dismissal with prejudice, because "unreviewed state administrative proceedings may be given preclusive effect in federal court with regard to the Civil Rights statutes," *Benson v. N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 327 (E.D.N.Y. 2007) (citing, *inter alia*, *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 797 (1986)), and "a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes," *Marvel Characters, Inc.*, 310 F.3d at 287.

However, state administrative proceedings unreviewed by courts do not bar a claim under Title VII.  *See Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 231–32 (2d Cir. 2015) ("A claimant may bring federal ADA and Title VII claims even if they have been rejected in a state administrative proceeding. . . . [W]e do not give preclusive effect to state agency decisions unless

13

they have been reviewed in a state court proceeding.")[12] Additionally, the Second Circuit has considered and found that "a Title VII plaintiff who prevailed on her discrimination claims before a state administrative agency and in appeals of the agency decision to state court can subsequently file suit in federal court seeking relief that was unavailable in the state proceedings," *Nestor v. Pratt & Whitney*, 466 F.3d 65, 69 (2d Cir. 2006),[13] because while "Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices . . . [it] provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums," *id.* at 71 (quoting *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 67–68 (1980)).

Here, the punitive damages Plaintiff seeks as part of his Title VII claim were not available at the agency level. (*See generally* Pl.'s Opp., Dkt. 24.) As Plaintiff correctly argues, at the time the parties settled Plaintiff's administrative case, the NYSDHR lacked authority to award punitive damages based on employment discrimination.[14] N.Y. Exec. Law § 297(4)(c) (McKinney 2016);

---

[12] The Court recognizes that, as Defendant notes (*see* MSJ, Dkt. 30, at 14), "[f]ederal courts within this Circuit have applied the doctrine of *res judicata* to preclude employment discrimination claims arising out of the same set of facts that were previously alleged in support of unsuccessful claims before the NYSDHR and the New York Supreme Court." *Barnes v. N.Y.S. Div. of Human Rights*, No. 14-CV-2388 (LTS) (HBP), 2016 WL 110522, at *6 (S.D.N.Y. Jan. 8, 2016) (collecting cases). Here, however, as discussed *infra*, there was no state court review of the administrative dismissal of Plaintiff's case.

[13] At the same time, the Court reiterates that, following the logic in *Nestor*, 466 F.3d 65, Plaintiff's claim for compensatory damages under Title VII does not survive, even though the outcome of the administrative proceeding was not reviewed by a state court, because compensatory damages were available to Plaintiff at the NYSDHR. *See* N.Y. Exec. Law § 297(4)(c) (McKinney 2016) (providing for compensatory damages in employment discrimination cases at the NYSDHR).

[14] The NYSHRL was subsequently amended in October 2019 to provide for punitive damages in employment discrimination cases at the NYSDHR. *Compare* N.Y. Exec. Law § 297(4)(c) (McKinney 2019) *with* N.Y. Exec. Law § 297(4)(c) (McKinney 2016).

14

*see also Ballard v. HSBC Bank USA, N.A.*, 827 F. Supp. 2d 187, 191 (W.D.N.Y. 2011). Because *Nestor* construes a Title VII punitive damages claim as distinct from underlying state discrimination claims for *res judicata* purposes, it is not entirely clear to the Court that the waived "claims and allegations asserted in the SDHR Proceeding" unambiguously include Plaintiff's claim for punitive damages under Title VII.[15] Similar agreements often waive "any and all claims" that a person has, had, or may have, against the releasees, or all claims arising out of the same operative set of facts. *See, e.g.*, *Smith v. JPMorgan Chase*, No. 15-CV-808 (PAE), 2016 WL 5339548, at *2 (S.D.N.Y. Sept. 23, 2016) (general release found where settlement covered "any and all claims that [plaintiff] has, had, may have or may have had as a result of [plaintiff]'s employment or termination of employment at [defendant]"). Here, while the waiver does include language about claims "arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding," that language ultimately modifies the "claims and allegations asserted in the SDHR Proceeding" and is limited to those claims and allegations.[16] (*See* Settlement Agreement, Dkt. 31, at ECF 50.)

---

[15] The Court also acknowledges that at least one court in this circuit has held that a settlement agreement followed by a dismissal with prejudice at the NYSDHR bars recovery in federal court under Title VII. *See Hughes v. Lillian Goldman Family, LLC*, 153 F. Supp. 2d 435, 447 (S.D.N.Y. 2001) (holding that a "Conciliation Agreement ordered by NYSDHR withdrawing the plaintiff's claims with prejudice . . . constitute[d] a final judgment on the merits for purposes of res judicata" in plaintiff's housing discrimination case such that the plaintiff was barred by her settlement from pursuing her claims in federal court). *Hughes* is distinguishable, however, because the NYSDHR, while historically barred from awarding punitive damages for employment discrimination, has long been able to grant them for housing discrimination. *See* N.Y. Exec. Law § 297(4)(c). Because the NYSDHR, as the initial forum, had the power to award the full measure of relief sought in the later litigation, no exception to the *res judicata* doctrine was implicated. *See Burgos*, 14 F.3d at 790.

[16] The Court notes that the Settlement Agreement only refers by name to claims waived under New York State laws, though it also provides that the list of claims waived is not limited to those listed. (*See* Settlement Agreement, Dkt. 31, at ECF 50.)

15

Generally, "[t]he court should read the integrated contract as a whole to ensure that undue emphasis is not placed upon particular words and phrases." *Law Debenture Tr. Co.*, 595 F.3d at 468 (internal quotation marks and citation omitted). Here, however, the other clauses of the Settlement Agreement do not provide clear guidance on how to properly interpret "claims and allegations asserted in the SDHR Proceeding." Defendant points to several clauses in the agreement as additional evidence of the general nature of the release:

- "Barker and Aramark desire to settle and resolve fully and finally **all claims and allegations** asserted by Barker in the SDHR Proceeding." (*Id.* at 1 (emphasis added).)

- "The parties wish to avoid lengthy, costly, and time-consuming litigation and wish to obtain full, final, and complete settlement of **all claims and allegations** asserted by Barker in the SDHR Proceeding." (*Id.* (emphasis added).)
. . .
- "Upon receipt of the payments provided for in Paragraph 3 of this Agreement and the payments provided for in the Stipulation of Settlement attached hereto as Exhibit 1, **Barker will have received all amounts due from Aramark for the claims and allegations asserted in the SDHR Proceeding, including but not limited to the following: (i)** *all wages earned*, **including but not limited to minimum wage and overtime wages and all wages applicable; (ii)** *any alleged unpaid Commissions that were the subject of the SDHR Proceeding*; **and (iii) payment for all accrued but unused paid vacation time**." (*Id.* ¶ 6.1 (emphasis added).)[17]

(MSJ, Dkt. 30, at 9 (emphasis in original) (quoting Settlement Agreement, Dkt. 31, at ECF 49–50).) These clauses, however, do nothing to clarify the meaning of "claims and allegations asserted in the SDHR proceeding," and indeed are susceptible to the same ambiguity. Furthermore, to the extent that Paragraph 6.1 of the Settlement Agreement, set forth above, purports to specify, albeit non-exhaustively, "all amounts due from Aramark for the claims and allegations asserted in the

---

[17] The Settlement Agreement includes consideration for unpaid wages and commissions, attorneys' fees, and "non-wage compensatory damages that were the subject of the SDHR Proceeding." (Settlement Agreement, Dkt. 31, at ECF 51.) It does not, however, include consideration for punitive damages.

16

SDHR Proceeding," it notably fails to include punitive damages, which lends support to Plaintiff's interpretation of the waiver as not extending to this relief since it was not available under the NYSHRL.[18]

Going a step further, however, Plaintiff insists that his right to sue for punitive damages in federal court is explicitly reserved by the recital clause in the agreement providing that he

> expressly reserves any rights he may have to pursue any claims of racial discrimination and related issues not addressed within the purview and jurisdiction of the SDHR Public Hearing that is scheduled for 4/10 and 4/11/2019, before the Division. Additionally, this agreement does not in any way, preclude or inhibit Barker from pursuing whatever remedies that may be available to him in Federal Court, regarding said claims not addressed in the SDHR Hearing.

(Settlement Agreement, Dkt. 31 at ECF 49; *see* Pl.'s Opp., Dkt. 24, at 4–5.) The Court again disagrees as this provision also turns on the definition of claims "within the purview and jurisdiction of the SDHR Public Hearing." If the Court were to accept Defendant's interpretation of "claims," it could easily read this provision as merely reserving Plaintiff's right to sue in federal court for racial discrimination based on a completely different set of facts than that alleged here, and thus as inapplicable to the instant case, which alleges the same facts as Plaintiff's NYSDHR complaint.[19]

---

[18] Even though the NYCHRL also provides for punitive damages, *see* N.Y.C. Admin. Code § 8–502; *Infantolino v. Joint Indus. Bd. of Elec. Indus.*, 582 F. Supp. 2d 351, 361–62 (E.D.N.Y. 2008), as previously discussed, Plaintiff's NYCHRL claim is still barred because the election of remedies doctrine under both the NYSHRL and NYCHRL precludes "a plaintiff from pursuing his discrimination claims in a court of law when the same claims were previously brought before a local administrative agency." *DuBois*, 533 F. App'x at 41.

[19] Though the Court finds the language of the waiver to be ambiguous, it is by no means persuaded that the Settlement Agreement in fact reserves Plaintiff's right to sue for punitive damages under Title VII. "[P]arties engage in settlement with the expectation of finality for pending issues and claims," *Spanski Enterprises, Inc.*, 2013 WL 81263, at *5, and the Court is skeptical that Defendant would have settled the NYSDHR claims without ensuring that Plaintiff would not again bring claims based on the same facts. *See id.* ("There is a strong interest in the finality of judgments, especially when the parties have entered into a settlement agreement. No reasonable party would intend to give up their rights to pursue claims permanently and completely

17

Nevertheless, the Court, having found the release to be ambiguous with respect to scope of the claims released, must look outside the Settlement Agreement for evidence of the parties' intent with regard to the scope of the waiver. *See Quinio v. Aala*, 344 F. Supp. 3d 464, 471 (E.D.N.Y. 2018) ("If the court determines that the provision is ambiguous, it must then determine whether there is extrinsic evidence regarding the parties' intent.") (citing *Gallien v. Conn. Gen. Life Ins. Co.*, 49 F.3d 878, 884 (2d Cir. 1995)). "Although a determination that a contract is ambiguous ordinarily requires denial of summary judgment, the court may nonetheless grant summary judgment where the extrinsic evidence illuminating the parties' intended meaning of the contract is so one-sided that no reasonable person could decide to the contrary." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 115 (2d Cir. 2010) (internal quotation marks and citation omitted). Here, given the limited nature of the summary judgment motion and the lack of discovery, insufficient evidence exists in the record to determine the parties' intent at this stage. Plaintiff alleges in his papers that he rejected a larger settlement amount to preserve his right to sue in federal court, but his statement is unsworn and he provides no evidence or specifics regarding the earlier amount. (*See* Pl.'s Opp., Dkt. 24, at 1–2, 4–6.) Plaintiff also submits a draft

---

and not hold the other side to a similar expectation.") (internal quotation marks, citation, and alteration omitted) (citing, *inter alia*, *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986))). The Court finds it possible and even likely that by waiving "all allegations asserted in the SDHR Proceeding," the Plaintiff executed a general release and waived his right to allege any of the facts raised in the NYSDHR proceeding, and thus his ability to establish a factual basis for a punitive damages claims. The Court is mindful that "strong policy considerations require that what all parties thought to be a closed matter remain so" and that one "who gives a general release has had the opportunity to press his claim and once the decision to settle is made, a party must abide by it." *Cuffee v. City of New York*, No. 15-CV-8916 (PGG) (DF), 2017 WL 9802836, at *6 (S.D.N.Y. Nov. 14, 2017) (alterations omitted).

18

"stipulation of settlement"[20] of his NYSDHR claims, presumably to show that the parties had removed the language waiving

> any and all claims arising under local, state or federal statute, regulation, or ordinance relating to employment discrimination, or any other claim related to or arising out of the Complainant's employment by the Respondent which the Complainant has asserted or could have asserted for events occurring through the date of this agreement.

(*See* Pl.'s Opp. Exhibit A, Dkt. 24-1, ¶ 6.)

This evidence, standing alone, is insufficient to warrant summary judgment on Plaintiff's Title VII claim for punitive damages. However, given the limited nature of the proceedings at this point, the Court will permit the parties to conduct limited discovery as to the scope of the waiver provision.

## CONCLUSION

Defendant's summary judgment motion is granted insofar as Plaintiff's claims under the New York State and New York City Human Rights Laws and Section 1981 are dismissed. Plaintiff's claim for compensatory damages under Title VII is also dismissed. However, summary judgment is denied without prejudice as to Plaintiff's Title VII claim for punitive damages.

The Court will permit limited discovery and additional briefing on the issue of the parties' intent with respect to the Settlement Agreement's waiver of "any and all claims and allegations asserted in the SDHR Proceeding." Specifically, the Court will grant the parties ninety (90) days from the entry of this Memorandum and Order to submit affidavits, subject to a limited waiver of attorney-client privilege, from the individuals involved in the negotiation of the Settlement

---

[20] This draft stipulation was a precursor of the Settlement Agreement that the parties filed with the NYSDHR. The NYSDHR then told the parties that they should instead execute a settlement agreement and then file a stipulation of dismissal with the NYSDHR, which the parties did. (*See* Supplemental Declaration of Steven M. Friedman, Dkt. 33, ¶¶ 2–3.)

Agreement regarding any reservation of Plaintiff's right to bring a claim for punitive damages under Title VII in federal court. Defendant may renew its motion upon the submission of this additional information, along with limited additional briefing from the parties.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 8, 2020
      Brooklyn, New York