UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
RONALD BARKER,

                Plaintiff,

        - against -

ARAMARK UNIFORM & CAREER
APPAREL, LLC,

              Defendant.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
19-CV-2710 (PKC) (SMG)

PAMELA K. CHEN, United States District Judge:

Plaintiff Ronald Barker, proceeding *pro se*, sued his former employer, Defendant Aramark Uniform & Career Apparel, LLC ("Aramark"), alleging violations of 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Executive Law §§ 296 *et seq.* ("NYSHRL"), and the New York City Administrative Code §§ 8-101 *et seq.* and § 8-107(15) ("NYCHRL").   On September 22, 2020, the Court granted summary judgment to Defendant on Plaintiff's claims "under 42 U.S.C. § 1981, Title VII, [] the NYCHRL, [and the] NYSHRL."   *Barker v. Aramark Unif. & Career Apparel, LLC*, No. 19-CV-2710 (PKC) (SMG), 2020 WL 5645092, at *6 (E.D.N.Y. Sept. 22, 2020).   The Court explained that these claims were barred by a Settlement Agreement between the parties where Plaintiff had "waive[d] and release[d] any and all claims and allegations asserted in" his proceeding before the New York State Division of Human Rights ("NYSDHR" or "SDHR") "arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York[.]"   (Settlement Agreement, Dkt. 31, at ECF[1] 50).   Because "the

---

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

factual allegations that form the basis of [Plaintiff's] complaint [we]re clearly substantively identical to those he asserted in the NYSDHR proceeding," he could not sustain his federal action seeking relief that would have been available to him in the NYSDHR proceeding. *Barker*, 2020 WL 5645092, at *6.

But because "a Title VII punitive damages claim [is] distinct from underlying state discrimination claims for *res judicata* purposes," the Court concluded that "it [was] not entirely clear to the Court that the waived 'claims and allegations asserted in the SDHR Proceeding' unambiguously include[d] Plaintiff's claim for punitive damages under Title VII." *Id.* at *7 (citing *Nestor v. Pratt & Whitney*, 466 F.3d 65, 69 (2d Cir. 2006)). The Court thus permitted limited discovery and additional briefing "regarding any reservation of Plaintiff's right to bring a claim for punitive damages under Title VII in federal court." *Id.* at *10.

Before the Court is Defendant's renewed motion for summary judgment. For the reasons discussed below, the Court denies the motion.

## BACKGROUND[2]

### I.     Plaintiff's Experience at Aramark

Plaintiff began working for Defendant, an industrial laundry and uniform rental business, in 2015 as a "route salesman/truck driver." (Complaint ("Compl."), Dkt. 1, at ECF 12, 71.)[3] In

---

[2] Because of the limited nature of this summary judgment motion, little discovery has yet been taken and neither party has submitted Rule 56.1 statements in connection with Defendant's renewed summary judgment motion. The Court cites the complaint to establish certain background information not material to this motion, but notes that the allegations described therein remain allegations rather than undisputed facts.

[3] Plaintiff's complaint in this action consists of the Court's standard *pro se* complaint form and 228 pages of attached exhibits, which include, *inter alia*, Plaintiff's original NYSDHR complaint and the NYSDHR's Final Investigation Report and Basis of Determination. Plaintiff did not include a separate statement of facts with his complaint, but instead wrote "see attached files from New York State Division of Human Rights." (*See* Compl., Dkt. 1, at ECF 5.) Accordingly, in describing the allegations in the Complaint, the Court draws from Plaintiff's

the summer of 2016, Defendant restructured its drivers' routes.  (*Id.* at ECF 69.)  According to Plaintiff, the purpose of the restructuring was to "level the playing field" because white drivers were at the time being paid more than black drivers.  (*Id.* at ECF 71.)  The white drivers protested the restructuring and filed an (ultimately unsuccessful) grievance with the Laundry, Distribution & Food Service Joint Board, Workers United Union (the "Union"), which has a collective bargaining agreement ("CBA") with Defendant.  (*Id.* at ECF 14; *see also id.* at ECF 45.)  Plaintiff also alleges that his co-workers were upset that he, a black man, was assigned stops on Long Island. (*Id.* at ECF 71.)

After the reorganization, a white driver, Brian Calhoun, complained about the re-routing to Dave Gambardella, an Aramark manager.  (*Id.*)  Gambardella gave some of Plaintiff's stops to Calhoun.  (*Id.* at ECF 71.)  When Plaintiff approached Gambardella about his stops, Gambardella stated, "this is how we look after our own," and then employed "stereotypical 'Black phrases,'" such as "you know what I'm saying homie?"  (*Id.*)

Plaintiff also raised the stop-reassignment issue with Defendant's assistant general manager and general manager, but they similarly refused to act.  (*Id.*)  Plaintiff then attempted to lodge a grievance with the Union, but the filing was delayed because Calhoun, the white driver who had received Plaintiff's stops, was the assistant shop steward responsible for filing grievances at Aramark and did not file Plaintiff's grievance.  (*Id.*)  Eventually, Plaintiff filed his grievance by contacting a union representative directly.  (*Id.*)  Plaintiff eventually left his job in late summer 2017.  (*Id.* at ECF 71.)

---

NYSDHR complaint and the NYSDHR's Final Investigation Report.  *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit or is incorporated in it by reference." (citations and quotations omitted)).

## II.     Plaintiff's NYSDHR Complaint

On January 24, 2018, Plaintiff filed a Verified Complaint with the NYSDHR charging Defendant "with an unlawful discriminatory practice relating to employment in violation of Article 15 of the Executive Law of the [NYSHRL] because of race/color."  (*Id.* at ECF 10, 12.)

As part of its investigation, the NYSDHR interviewed Plaintiff, as well as two witnesses identified by Plaintiff, both of whom had heard the manager Gambardella make "racially charged derogatory comments" toward black people on multiple occasions.  (*Id.* at ECF 72.)  The parties also engaged in briefing.  (*See id.* at ECF 16–32.)  Plaintiff supplemented the allegations in his NYSDHR Complaint in his April 22, 2018 reply to Defendant's response, claiming, *inter alia*, that in addition to changing his stops, Defendant had not properly compensated him, because it failed to pay him the "loss and ruin" pay he was owed from August to November 2016.  (*Id.* at ECF 31, 71).

On July 24, 2018, the NYSDHR issued its Determination After Investigation, in which it found "probable cause" to proceed on Plaintiff's NYSDHR Complaint.  (*Id.* at ECF 72.)  The case was calendared for a pre-hearing settlement conference in front of an NYSDHR Administrative Law Judge.  (*Id.* at ECF 75.)

## III.    The Settlement Agreement

The parties began settlement talks in September 2018, after the NYSDHR issued its Determination.  (Declaration of Steven M. Friedman ("Friedman Decl."), Dkt. 31, at ECF 3 ¶ 11.)[4] Plaintiff was not represented by counsel at first, but then retained counsel in February 2019.  (*Id.* ¶ 14.)  On April 8, 2019, Plaintiff entered into a settlement agreement with Defendant (the

---

[4] Plaintiff disputes several factual representations made in the Friedman Declaration (*see* Plaintiff's Opposition, Dkt. 24, at 3), but the disputed facts are not material to the instant motion.

"Settlement Agreement").  (*See id.* ¶ 17; Settlement Agreement, Dkt. 31, at ECF 49–55.)  Plaintiff signed the Settlement Agreement while on a conference call "with Aramark's attorney's [sic] Michael Fleming and Melissa Rodriguez, along with [his] attorney Stephen James[.]"  (Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl.'s Opp"), Dkt. 24, at 1.)

The signed Settlement Agreement contained, among others, the following provisions:

> WHEREAS, Barker filed a verified complaint with the New York State Division of Human Rights (the "SDHR"), captioned *New York State Division of Human Rights on the Complaint of Ronald Barker v. Aramark Uniform & Career Apparel, LLC*, Case No. 10193046, for alleged unpaid wages and/or commissions and unlawful discriminatory practices relating to his employment with Aramark ("SDHR Proceeding");
>
> . . .
>
> WHEREAS, Barker expressly reserves any rights he may have to pursue any claims of racial discrimination and related issues not addressed within the purview and jurisdiction of the SDHR Public Hearing that is scheduled for 4/10 and 4/11/2019, before the Division. Additionally, this agreement does not in any way, preclude or inhibit Barker from pursuing whatever remedies that may be available to him in Federal Court, regarding said claims not addressed in the SDHR Hearing;
>
> WHEREAS, Barker intends to fully pursue his arbitration case currently pending regarding his complaints against Aramark not addressed within the purview and jurisdiction of the SDHR and by signing this agreement, Barker, in no way, intends to waive or forfeit any remedies sought pursuant to said arbitration proceedings not addressed in the SDHR Hearing.
>
> WHEREAS, Barker is represented by Stephen G. James, Esq., and Barker represents that he is satisfied that his counsel has used best efforts to pursue and resolve the disputes in a manner that is fair to his interests. Barker represents that he has discussed all aspects of his claims and allegations and this Agreement with his counsel, has been fully advised by his counsel as to his rights, understands that he is waiving significant legal rights by signing this Agreement, and enters into this Agreement voluntarily, with a full understanding of the Agreement and all of its terms.
>
> . . .
>
> WAIVER & RELEASE. Barker waives and releases any and all claims and allegations asserted in the SDHR Proceeding against the Company and all of its parent, subsidiary and affiliated companies or entities, including the entities listed in Exhibit 21.1 to Aramark's 2017 United States Securities and Exchange Commission Form 10-K filing, and all of their past and present officers, directors,

employees, agents and assigns (collectively, "Releasees"), including but not limited to Aramark American Food Services, Inc., Aramark Food and Support Services Group, Inc., and Aramark School Support Services, LLC, d/b/a Aramark Schools, LLC, arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York including, but not limited to the New York State Executive Law, including its Human Rights Law, the New York State Civil Rights Law, the New York State Wage Payment Laws, the New York State Equal Rights Law, the New York State Equal Pay Law, the retaliation provisions of the New York State Workers' Compensation and Disability Benefits Laws, the New York State Labor Law and any applicable Wage Orders, the New York Occupational Safety and Health Laws, all as amended.

(Settlement Agreement, Dkt. 31, at ECF 49–50.)

As part of the Settlement Agreement, Defendant agreed to ██████████████

████████████████████████████████████████████████████

████████████████████. (*Id.* at ECF 51.)

On April 5, 2019, the parties jointly submitted a withdrawal letter to the NYSDHR, containing a letter from Plaintiff withdrawing his claims because they were addressed by private settlement. (Withdrawal Letters, Dkt. 31, at ECF 57–58.) On April 16, 2019, the NYSDHR Commissioner consented to the dismissal of the NYSDHR complaint with prejudice. (Dkt. 33, at ECF 8–10.)

## IV.     The First Summary Judgment Motion

Shortly before the Settlement Agreement was finalized, Plaintiff received a "Right to Sue" letter from the EEOC, dated February 14, 2019. (*See* EEOC Letter, Exhibit B to Pl.'s Opp., Dkt. 24-2, at 2.) Plaintiff commenced this action on May 8, 2019. (*See* Compl., Dkt. 1, at ECF 7.) On July 26, 2019, Defendant requested a pre-motion conference in advance of a motion to dismiss arguing, *inter alia*, that Plaintiff's suit was barred by the Settlement Agreement. (*See* Dkt. 10.) The Court held a conference on August 21, 2019, at which it instructed Defendant to file a motion for partial summary judgment rather than a motion to dismiss to the extent it moved on the basis

of the Settlement Agreement.  The Court stayed briefing on the motion while a parallel arbitration process took place, and lifted the stay after the arbitrator rendered his decision.[5]  (*See* Nov. 6, 2019 Dkt. Order.)

On September 22, 2020, the Court granted summary judgment to Defendant on Plaintiff's claims "under 42 U.S.C. § 1981, Title VII, [] the NYCHRL, [and the] NYSHRL."  *Barker*, 2020 WL 5645092, at *6.   The Court explained that these claims were barred by the Settlement Agreement's "waive[r] and release[] [of] any and all claims and allegations asserted in" Plaintiff's proceeding before the NYSDHR "arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York[.]"  (Settlement Agreement, Dkt. 31, at ECF 50).  Because "the factual allegations that form the basis of [Plaintiff's] complaint [we]re clearly substantively identical to those he asserted in the NYSDHR proceeding," Plaintiff could not sustain his federal action seeking relief that would have been available to him in the NYSDHR proceeding.  *Barker*, 2020 WL 5645092, at *6.

But because "a Title VII punitive damages claim [is] distinct from underlying state discrimination claims for *res judicata* purposes," the Court concluded that "it [was] not entirely clear to the Court that the waived 'claims and allegations asserted in the SDHR Proceeding' unambiguously include[d] Plaintiff's claim for punitive damages under Title VII."  *Id.* at *7 (citing *Nestor*, 466 F.3d at 69).   The Court thus permitted limited discovery and additional briefing

---

[5] The arbitration case was brought by the Union against Defendant and sought loss and ruin commissions.  (Dkt. 31, at ECF 62–67.)  A hearing on the grievance was held on October 3, 2019 (*see* Friedman Decl., Dkt. 31, ECF 4 ¶ 19), and on October 10, 2019, the Arbitrator issued a decision dismissing the grievance based on the Settlement Agreement (*see* Dkt. 31, at ECF 65–66 ("On balance, I am persuaded that the Settlement effective[ly] moots the grievance.")).

"regarding any reservation of Plaintiff's right to bring a claim for punitive damages under Title VII in federal court." *Id.* at \*10.

## V.      The Instant Summary Judgment Motion

Since the Court's September 22, 2020 Order, the parties have compiled affidavits regarding their negotiations over the Settlement Agreement.  Plaintiff submitted his own sworn statement that he "rejected [an initial settlement] offer[] because [he] wanted to preserve [his] rights under Title VII in Federal Court for racial discrimination." (Plaintiff's Affidavit ("Pl. Aff."), Dkt. 40, at ECF 2—SEALED.)  Plaintiff's affidavit further claims that "[t]his is why punitive damages were not listed in the agreement." (*Id.* at ECF 3—SEALED.)

Plaintiff also submitted an affidavit from the attorney who represented him during the settlement negotiations.  According to the affidavit, "[Plaintiff] was adamant about preserving his rights to pursue his claims for punitive damages under Title VII in Federal Court since it was not available to him in SDHR." (*Id.* at ECF 76—SEALED.)  Further, Plaintiff's former attorney "expressed to [Defense Counsel] that [Plaintiff] ha[d] not, and [would] not, change his position on preserving his rights to pursue punitive damages in Federal Court." (*Id.* at ECF 77—SEALED.) Although "an offer was made, for ███████████████, to settle all matters/claims of [Plaintiff]," Plaintiff "rejected it immediately because he wanted to preserve his rights to pursue his Title VII issues in Federal Court." (*Id.*)

Per the Court's September 22, 2020 Order, Defendant renewed its motion for summary judgment in light of the additional evidence. (*See* Defendant's Renewed Motion for Summary Judgment, Dkt. 44; *see also* Defendant's Memorandum in Support of Renewed Motion for Summary Judgment ("Def. Br."), Dkt. 46.) Now before the Court is Defendant's renewed motion.

## LEGAL STANDARD

Summary judgment is appropriate where the submissions of the parties, taken together, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986) (the summary judgment inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248.

The initial burden of "establishing the absence of any genuine issue of material fact" rests with the moving party.  *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010) (per curiam).  Once this burden is met, the burden shifts to the nonmoving party to put forward some evidence establishing the existence of a question of fact that must be resolved at trial.  *Spinelli v. City of New York*, 579 F.3d 160, 166–67 (2d Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  A mere "scintilla of evidence" in support of the nonmoving party is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]."  *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003) (quotations omitted and alteration in original).  That is, "[t]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis, citation, and quotations omitted).

In determining whether a genuine issue of fact exists, the Court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008).  The Court also construes any disputed facts in the light most favorable to the nonmoving party.  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59 (1970).  However, "the mere existence of some alleged factual dispute

9

between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis omitted).

The Second Circuit "liberally construe[s] pleadings and briefs submitted by *pro se* litigants, reading such submissions to raise the strongest arguments they suggest." *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (citations and quotations omitted). Nevertheless, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions unsupported by evidence, are insufficient to overcome a motion for summary judgment." *Rodriguez v. Hahn*, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002) (citation omitted).

## DISCUSSION

Defendant raises two arguments for why the Settlement Agreement prevents Plaintiff from bringing a Title VII claim seeking only punitive damages. First, Defendant contends that the law does not allow such a claim. Second, Defendant argues that the parties did not intend for the Settlement Agreement to reserve Plaintiff's right to bring a Title VII claim seeking only punitive damages. The Court considers each argument in turn.

## I.     Whether A Plaintiff May Bring a Title VII Claim Seeking Only Punitive Damages

Defendant first argues that "the law does not recognize an independent cause of action for punitive damages," so "no such right could have been reserved by the Settlement Agreement." (Def. Br., Dkt. 46, at 10.)

### A.     Legal Standard

"Prior to 1991, only equitable relief, primarily backpay, was available to prevailing Title VII plaintiffs; the statute provided no authority for an award of punitive or compensatory damages." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533–34 (1999) (citation omitted). In 1991, "Congress provided for additional remedies, including punitive damages, for certain classes of

Title VII . . . violations." *Id.* at 534 (referencing 42 U.S.C. § 1981a(a)(1)).  Under Section 1981a, Plaintiffs since have been able to "recover punitive damages . . . [by] demonstrat[ing] that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1).

"An award of actual or nominal damages is not a prerequisite for an award of punitive damages in Title VII cases." *Cush-Crawford v. Adchem Corp.*, 271 F.3d 352, 357 (2d Cir. 2001); *accord Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995) ("[N]othing in the plain language of § 1981a conditions an award of punitive damages on an underlying award of compensatory damages.").  In *Cush-Crawford*, the court observed that "[t]here is some unseemliness for a defendant who engages in malicious or reckless violations of legal duty to escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm." 271 F.3d at 359.  Thus, "in Title VII cases, where the factfinder has found in a plaintiff's favor that the defendant engaged in the prohibited discrimination, punitive damages may be awarded . . . regardless [of] whether the plaintiff also receives an award of compensatory or nominal damages." *Id.*; *see also King v. Macri*, 993 F.2d 294, 297 (2d Cir. 1993) ("[P]unitive damages may be awarded in the absence of a compensatory award . . . in section 1983 cases." (citation omitted)).[6]

---

[6] Many other Circuits have agreed.  *See, e.g.*, *Abner v. Kansas City S. R.R. Co.*, 513 F.3d 154, 160 (5th Cir. 2008) ("[A] punitive damages award under Title VII and § 1981 need not be accompanied by compensatory damages."); *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 535 (6th Cir. 2005) ("[T]here is no reason to condition punitive damages on the award of actual or nominal compensatory damages."); *Sommerfield v. Knasiak*, 967 F.3d 617, 624 (7th Cir. 2020) ("Punitive-damages awards . . . are not conditioned upon the presence of compensatory damages." (citation omitted)); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991) ("Even in the absence of

Even so, the Second Circuit has expressed skepticism about "the effect of a *release* of a compensatory claim on the viability of a request for punitive damages arising out of the same conduct." *Virgilio v. City of New York*, 407 F.3d 105, 117 n.12 (2d Cir. 2005) (emphasis added). Although this remains an open question, a decision of a court in the Southern District of New York, *Goonewardena v. N.Y.S. Workers' Comp. Bd.*, No. 09-CV-8244 (RA) (HBP), 2016 WL 7439414, at *1 (S.D.N.Y. Feb. 9, 2016), *report and recommendation adopted sub nom. Goonewardena v. N.Y. Workers Comp. Bd.*, 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016), offers insight. There, the defendant moved for summary judgment against the plaintiff's Title VII claim on *res judicata* grounds because the plaintiff had already lost in a similar state proceeding. The court rejected the *res judicata* argument, explaining that "[*res judicata*] will not apply . . . where the initial forum did not have the power to award the full measure of relief sought in the later litigation," and that neither compensatory nor punitive damages—both of which are available under Title VII—had been available in the plaintiff's state proceeding. *Id.* at *8–9 (citations and quotations omitted). The defendant nevertheless argued that *res judicata* barred the plaintiff's Title VII claim because the plaintiff had "stated in his deposition that he [was] not seeking compensatory damages." *Id.* at *10. The defendant contended "that *res judicata* should apply because there is no basis for a trial solely on punitive damages when [a plaintiff] is not eligible for any other form of relief." *Id.* (quotations omitted). Relying on *Cush-Crawford*, the court rejected this argument. *Id.* It reasoned that "punitive damages may be awarded in Title VII cases 'regardless of whether the plaintiff also receives an award of compensatory or nominal damages.'" *Id.* (brackets omitted) (quoting *Cush-Crawford*, 271 F.3d at 359). Although the plaintiff did not

---

compensatory damages, the evidence supports a conclusion that [the defendants] acted with reckless or callous indifference to [the plaintiff's] constitutional rights. Accordingly, the jury's award of punitive damages was proper and will not be disturbed on appeal." (citations omitted)).

intend to pursue compensatory damages at trial, the court allowed his claim to proceed under Title VII, seeking punitive damages as the sole remedy. *Id.*; *accord Sheppard v. Zavis*, No. 11-CV-2398 (NLH) (KMW), 2012 WL 2341036, at *6 (D.N.J. June 19, 2012) (relying on the *Cush-Crawford* reasoning to reject the defendants' motion to dismiss a Section 1983 claim where the plaintiff sought only "punitive damages and fail[ed] to allege[] compensatory damages").

In contrast to the Title VII context, courts have clarified that "a request for punitive damages [under New York law] is *nonviable* 'absent a valid claim for compensatory damages . . . .'" *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58, 60 (2d Cir. 2013) (summary order) (quoting *Hubbell v. Trans World Life Ins. Co. of N.Y.*, 50 N.Y.2d 899, 901 (N.Y. 1980)). Under New York law, "[o]nce a claim for compensatory injuries is barred, the possibility of a punitive award is likewise relinquished." *Virgilio*, 407 F.3d at 117; *accord Shapnik v. Hebrew Home for the Aged at Riverdale*, No. 20-CV-6774 (LJL), 2021 WL 1614818, at *13 (S.D.N.Y. Apr. 26, 2021) ("[T]here is no separate cause of action for punitive damages under New York law." (collecting cases)); *see also Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603 (N.Y. 1994).

## B.     A Title VII Claim Seeking Only Punitive Damages is Permissible

Defendant urges the Court to apply New York law to conclude that "the law does not recognize an independent claim for punitive damages," and thus that "no such right could have been reserved by the Settlement Agreement." (Def. Br., Dkt. 46, at 10.) It points to the choice of law paragraph in the Settlement Agreement, which provides that "any dispute arising under this Agreement, or related in any way to the term of same, shall be governed by the laws of the State of New York, without regard to choice of law principles." (Settlement Agreement, Dkt. 31, at ECF 54.) Defendant contends that Plaintiff makes "a fundamental legal error" in assuming "he has a right to maintain a[n] independent cause of action for punitive damages" under New York

law, and thus that the Settlement Agreement did not reserve such a claim.  (Def. Br., Dkt. 46, at 7.)

But Plaintiff is suing under Title VII, not under New York law.  The "legal error" Defendant attributes to Plaintiff is the allegedly improper view that *Title VII* allows a claim seeking punitive damages as the only remedy.  The question therefore is whether Title VII permits such claims, not whether they are possible under some New York law Plaintiff does not invoke. Because the legal issue Defendant raises concerns what Title VII allows, not what the Settlement Agreement permits, it is not subject to the choice of law clause in the Settlement Agreement.  *See, e.g.*, *Sheppard*, 2012 WL 2341036, at *6 ("Although Defendants correctly cite [] cases for the general proposition that [state] law prohibits the recovery of punitive damages where an award of compensatory damages is lacking, [] these cases [did not] involve[] a claim for punitive damages brought under Section 1983 for the alleged deprivation of federal constitutional rights. . . . [F]ederal common law specifically permits the recovery of punitive damages in cases brought under Section 1983 regardless of whether other damages have been awarded.").

Defendant next argues that standalone punitive-damages actions also are impermissible under Title VII.  It relies on cases such as *Kaye v. Storm King School*, No. 11-CV-3369 (VB), 2011 WL 7101193, at *5 n.3 (S.D.N.Y. Nov. 18, 2011), where the court explained that "42 U.S.C. § 1981a is not an independent cause of action, but rather functions as a remedy provision for violations of Title VII."  (Def. Br., Dkt. 46, at 8); *see also Graham v. Watertown City Sch. Dist.*, No. 10-CV-756, 2011 WL 1344149, at *4 (N.D.N.Y. Apr. 8, 2011) ("[Section 1981a] does not provide an independent cause of action. Instead, [it] enhances the remedies available to prevailing parties in certain actions . . . ." (citation omitted)).  But the Court's September 22, 2020 Order merely permitted discovery on whether the parties intended that Plaintiff be allowed to sue under

14

Title VII seeking punitive damages as a sole remedy. It did not find that Plaintiff could sue under Section 1981a—the remedies provision—itself, or bring a standalone cause of action for punitive damages. The Court views the legal question presented in this case—in contrast to *Kaye* and *Graham*—as whether Plaintiff may bring a claim under Title VII seeking only punitive damages *as a remedy*; not whether Plaintiff may raise a standalone cause of action under the remedies statute.

The only legal issue posed by this case therefore is whether the release of a Title VII compensatory damages claim—as found here by the Court—bars a Title VII claim seeking punitive damages based on the same conduct. As noted, the Second Circuit has not addressed "the effect of a *release* of a compensatory claim on the viability of a request for punitive damages arising out of the same conduct." *Virgilio*, 407 F.3d at 117 n.12 (emphasis added). Still, it has clarified that "[a]n award of actual or nominal damages is not a prerequisite for an award of punitive damages in Title VII cases," because "a defendant who engages in malicious or reckless violations of legal duty" cannot "escape either the punitive or deterrent goal of punitive damages merely because either good fortune or a plaintiff's unusual strength or resilience protected the plaintiff from suffering harm." *Cush-Crawford*, 271 F.3d at 357, 359.

Despite the Second Circuit's skepticism in *Virgilio*, the Court finds no material difference between a plaintiff who proves malicious discrimination to the jury but does not prove an injury, *see id.*, and one who merely *seeks* to prove malicious discrimination to a jury despite *agreeing* or choosing to forgo an injury argument. As *Cush-Crawford* shows, the rationale for allowing a punitive award without a compensatory award is to vindicate the punitive and deterrent purposes of Section 1981a. This is just as valid a goal for a plaintiff who agrees at the outset to forgo a

15

compensatory award (*e.g.*, Plaintiff here) as it is for a plaintiff who pursues but fails to obtain a compensatory award at trial (*e.g.*, the plaintiff in *Cush-Crawford*).

And there is ample reason both a plaintiff and defendant might agree to reserve a claim seeking punitive damages despite foreclosing a claim seeking compensatory damages. For example, a plaintiff might wish to obtain a partial payment from the defendant while reserving the right to sue without the burden of presenting additional evidence of financial or emotional injury. And a defendant might hope to simplify the litigation and eliminate one potential source of damages, perhaps based on an assessment that the plaintiff will be unable to later prove he or she is entitled to punitive damages.

In any event, that a jury may *award* punitive damages without awarding compensatory damages, *see Cush-Crawford*, 271 F.3d at 359, suggests that a plaintiff may *seek* punitive damages without seeking compensatory damages. Where, as here, a defendant has the opportunity to foreclose a future Title VII claim seeking both compensatory and punitive damages, as a condition of settling the plaintiff's state court case, allowing the plaintiff to maintain the Title VII claim with a limited potential remedy—punitive damages—might be consideration warranting a lower settlement amount. The Court thus finds that a plaintiff may pursue a claim under Title VII despite having waived the right to obtain a compensatory remedy, and thus seeking only punitive damages. The question in this case, as the Court noted in its September 22, 2020 Order, therefore is whether the parties here intended that Plaintiff be able to pursue such a claim.

## II. Whether the Settlement Agreement Preserved Plaintiff's Right to Sue Under Title VII Seeking Punitive Damages

Defendant argues that Plaintiff may not sue under Title VII seeking only punitive damages in this case because the undisputed material facts show that the parties intended to release that right in the Settlement Agreement.

## A.      Legal Standard

"[S]ettlement agreements are hybrids in the sense that they are at once both contracts and orders; they are construed largely as contracts, but are enforced as orders." *Rothstein v. Am. Int'l Grp., Inc.*, 837 F.3d 195, 205 (2d Cir. 2016) (citations, quotations, and brackets omitted). "As contracts, [courts] interpret them in accordance with general principles of contract law." *Id.* (citation omitted). "When interpreting a contract, the intention of the parties should control, and the best evidence of intent is the contract itself." *Cont'l Ins. Co. v. Atl. Cas. Ins. Co.*, 603 F.3d 169, 180 (2d Cir. 2010) (quotations and alterations omitted). "Thus, if their terms are unambiguous, [courts] must interpret [] Settlement Agreements within their four corners, and not by reference to what might satisfy the purposes of one of the parties to them." *Rothstein*, 837 F.3d at 205–06 (citations, quotations, and brackets omitted).

"[I]f the agreement is ambiguous," however, "extrinsic evidence of the parties' intent may be considered." *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (brackets omitted) (quoting *Greenfield v. Philles Recs., Inc.*, 98 N.Y.2d 562, 569 (N.Y. 2002)); *accord Quinio v. Aala*, 344 F. Supp. 3d 464, 471 (E.D.N.Y. 2018) ("If the court determines that the provision is ambiguous, it must then determine whether there is extrinsic evidence regarding the parties' intent." (citing *Gallien v. Conn. Gen. Life Ins. Co.*, 49 F.3d 878, 884 (2d Cir. 1995))). "Under New York law, . . . the question of whether a written contract is ambiguous is a question of law for the court." *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 396 (2d Cir. 2009) (citation omitted). "[A] contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." *Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 773 F.3d 110, 114 (2d Cir. 2014) (citation and quotations omitted).

"Although a determination that a contract is ambiguous ordinarily requires denial of summary judgment, the court may nonetheless grant summary judgment where the extrinsic evidence illuminating the parties' intended meaning of the contract is so one-sided that no reasonable person could decide to the contrary." *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 115 (2d Cir. 2010) (citation and quotations omitted). "Similarly, summary judgment may be granted despite any ambiguities in the contract where there is no extrinsic evidence that would support a resolution of the ambiguities in favor of the nonmoving party's case." *Id.* (quotations and brackets omitted). "A court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (citation omitted). "New York follows the well established *contra proferentem* principle which requires that equivocal contract provisions are generally to be construed against the drafter." *McCarthy v. Am. Int'l Grp., Inc.*, 283 F.3d 121, 124 (2d Cir. 2002) (citations and quotations omitted).

### B.     A Genuine Issue of Fact Exists as to Whether Plaintiff Reserved the Right to Sue Under Title VII Seeking Punitive Damages

Here, the release provision at issue specifies that:

> [Plaintiff] waives and releases any and all claims and allegations asserted in the SDHR Proceeding against [Defendant] . . . arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding, including, but not limited to, the laws of the State of New York[.]

(Settlement Agreement, Dkt. 31, at ECF 50.)   Defendant argues that this provision precludes Plaintiff from bringing a Title VII claim seeking punitive damages as a remedy because (1) the release unambiguously bars such claims, and (2) the extrinsic evidence submitted since the Court's September 22, 2020 Order shows that the parties intended to foreclose such claims.

18

1.    The Release Is Ambiguous with Respect to Reservation of Plaintiff's
      Title VII Claim Seeking Punitive Damages

In the September 22, 2020 Order, the Court "found the release to be ambiguous with respect to scope of the claims released," and determined that it "must look outside the Settlement Agreement for evidence of the parties' intent with regard to the scope of the waiver." *Barker*, 2020 WL 5645092, at *9.  The Court explained that, by foreclosing "all claims and allegations *asserted in the SDHR Proceeding*, . . . arising from or relating to any and all [facts] that could have been alleged in the SDHR proceeding," the parties did not unambiguously foreclose a Title VII claim seeking relief that was *not available* in the SDHR proceeding.  *Id.* at *7 (emphasis added).

"Although a determination that a contract is ambiguous ordinarily requires denial of summary judgment," the Court ordered limited discovery to determine whether "the parties' intended meaning of the [Settlement Agreement was] so one-sided that no reasonable person could" find that Plaintiff reserved the right to sue under Title VII seeking punitive damages.  *Id.* at *9 (quoting *N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 115).  The Court noted that "insufficient evidence exist[ed] in the record to determine the parties' intent."  *Id.*  It observed, for example, that "Plaintiff allege[d] in his papers that he rejected a larger settlement amount to preserve his right to sue in federal court, but his statement [was] unsworn and he provide[d] no evidence or specifics regarding the earlier amount."  *Id.*

In its renewed motion for summary judgment, Defendant argues that the phrase in the release provision waiving "'any and all claims and allegations asserted in the SDHR Proceeding' is susceptible to only one reasonable interpretation" (Def. Br., Dkt. 46, at 11), and that "[t]he[] terms – 'claims' and 'allegations' – are unambiguous" (*id.* at 12).  But, as noted, the Court already rejected this argument when it "found the release to be ambiguous with respect to scope of the claims released."  *Barker*, 2020 WL 5645092, at *9.  "The law-of-the-case doctrine generally

19

provides that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (citation and quotations omitted).  As noted, "the question of whether a written contract is ambiguous is a question of law for the court."  *Abboud*, 568 F.3d at 396; *accord Cianchetti v. Burgio*, 44 N.Y.S.3d 293, 295 (N.Y. App. Div. 2016) ("We previously affirmed the court's determination that the contract was ambiguous, and our prior decision in a case is the law of the case until modified or reversed by a higher court." (citations, quotations, and brackets omitted)).  The Court's finding that "the language of the waiver [is] ambiguous," *Barker*, 2020 WL 5645092, at *9 n.19, thus is the law of the case.

In any event, as the Court noted in its September 22, 2020 Order, the Settlement Agreement does not unambiguously waive Plaintiff's right to seek punitive damages—which were unavailable in the SDHR proceeding—in federal court.  As the Court noted:

> Similar agreements often waive "any and all claims" that a person has, had, or may have, against the releasees, or all claims arising out of the same operative set of facts. *See, e.g.*, *Smith v. JPMorgan Chase*, No. 15-CV-808 (PAE), 2016 WL 5339548, at *2 (S.D.N.Y. Sept. 23, 2016) (general release found where settlement covered "any and all claims that [plaintiff] has, had, may have or may have had as a result of [plaintiff]'s employment or termination of employment at [defendant]").  Here, while the waiver does include language about claims "arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding," that language ultimately modifies the "claims and allegations asserted in the SDHR Proceeding" and is limited to those claims and allegations.  (*See* Settlement Agreement, Dkt. 31, at ECF 50.)

*Barker*, 2020 WL 5645092, at *7 (alterations in original) (footnote omitted).  The parties here could have agreed, for example, to a provision waiving "any and all claims arising from the facts that were or could have been asserted in the SDHR proceeding."

Defendant argues that the "claims" waived in the release provision "are the legal remedies and relief that Plaintiff sought in the SDHR Proceeding," whereas the "allegations" waived "are the asserted facts upon which the claims and relief were based."  (Def. Br., Dkt. 46, at 12.)  This,

Defendant contends, aligns with the definitions of the terms "claims" and "allegations," and, otherwise, those terms would be superfluous.  (*See id.*)  Defendant points, for example, to the definition in Black's Law Dictionary of "allegation" as "[s]omething declared or asserted as a matter of fact, esp. in a legal pleading; a party's formal statement of a factual matter as being true or provable, without its having yet been proved."  (*Id.* (quoting ALLEGATION, Black's Law Dictionary (11th ed. 2019).)  Defendant thus argues that the release provision prevents Plaintiff's Title VII suit here, because, as the Court noted in its first summary judgment order, "the factual allegations that form the basis of [Plaintiff's federal] complaint are clearly substantively identical to those he asserted in the NYSDHR proceeding."  (*Id.* at 1 (quoting *Barker*, 2020 WL 5645092, at *6).)

The Court agrees with Defendant that this is at least *a* plausible reading of the release provision, and one that prevents the redundancy Defendant identifies.  In fact, in its September 22, 2020 Order, the Court found "it possible and even likely that by waiving 'all allegations asserted in the SDHR Proceeding,' [] Plaintiff executed a general release and waived his right to allege any of the facts raised in the NYSDHR proceeding, and thus his ability to establish a factual basis for a punitive damages claim[]."  *Barker*, 2020 WL 5645092, at *9 n. 19.

But the Court disagrees with Defendant that this is the *only* plausible reading.  For example, Black's Law Dictionary provides another definition of "allegation": "A declaration that something is true; esp., a statement, not yet proved, that someone has done something wrong or illegal."  ALLEGATION, Black's Law Dictionary (11th ed. 2019).  This casts doubt on Defendant's reading of the term as limited to "assertions of fact," especially given that the release provision deviates from the typical language of general release provisions.  *See, e.g.*, *Smith*, 2016 WL 5339548, at *2 (general release found where settlement covered "any and all claims that [plaintiff] has, had, may

have or may have had as a result of [plaintiff]'s employment or termination of employment at [defendant]").

Further, although the meaning Defendant ascribes to "claims and allegations" avoids a possible redundancy, parsing "claims" and "allegations" as Defendant does would create another redundancy.  If, as Defendant contends, the "allegations" waived "are the asserted facts upon which the claims and relief were based" (Def. Br., Dkt. 46, at 12), Plaintiff would be unable to bring a lawsuit based on any "factual assertions" in the SDHR proceeding.  But then the term "claims" would be superfluous insofar as it covers, as Defendant urges, "legal theories" (*see id.*) that "aris[e] from or relat[e] to any and all acts, events and omissions alleged . . . in the SDHR Proceeding" (Settlement Agreement, Dkt. 31, at ECF 50).  Under Defendant's theory, waiving the right to sue based on "allegations asserted in the SDHR proceeding" would inherently waive the right to raise "claims"—*i.e.*, "legal theories"—"arising from or relating to the acts, events, or omissions that were alleged in the SDHR Proceeding."

Accordingly, the release provision is susceptible to the interpretation that it encompasses merely forms of relief that were obtainable in the SDHR proceeding, for injuries "arising from or relating to any and all acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding."  (Settlement Agreement, Dkt. 31, at ECF 50.)  Along these lines, the Court had no trouble dismissing Plaintiff's Title VII claim insofar as it sought compensatory damages, because his claim not only "ar[ose] from or relat[ed] to . . . acts, events and omissions alleged or that could have been alleged in the SDHR Proceeding" (Settlement Agreement, Dkt. 31, at ECF

22

50), but relied on "substantively identical" factual assertions "to those he asserted in the NYSDHR proceeding," *Barker*, 2020 WL 5645092, at *6.[7]

In sum, the release provision is ambiguous. Although Defendant's reading is "possible and even likely," *id.* at *9 n. 19, it is not the *only* plausible interpretation. *See Chesapeake Energy*, 773 F.3d at 114 ("Under New York law, a contract is ambiguous if its terms could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." (citation and quotations omitted)); *cf. Weisberg v. Color Tile Supermart, Inc.*, No. 90-CV-2343 (CES), 1991 WL 4738, at *3 (S.D.N.Y. Jan. 17, 1991) ("In this case the language in the lease regarding percentage rent may reasonably be interpreted in at least two ways. Plaintiff's interpretation is possible and so is defendant's. Accordingly, there is a triable issue of fact which precludes summary judgment." (footnote omitted)).

In any event, as noted, the Court already has deemed the release provision ambiguous. The Court therefore (again) rejects Defendant's argument that "the terms of the Release Provision are unambiguous" and that the Court "should not look to extrinsic evidence." (Def. Br., Dkt. 46, at 16).

---

[7] Although not controlling, this interpretation also would explain the reservation provision, which says that Plaintiff "expressly reserves any rights he may have to pursue any claims of racial discrimination and related issues not addressed *within the purview and jurisdiction of the SDHR*" Proceeding, and that "this agreement does not in any way, preclude or inhibit [Plaintiff] from pursuing whatever *remedies* that may be available to him in Federal Court, regarding said claims not addressed in the SDHR Hearing." *Barker*, 2020 WL 5645092, at *8–9 (quoting Settlement Agreement, Dkt. 31, at ECF 49 (emphasis added)).

2.     There Remain Disputed Issues of Fact Regarding the Parties' Intent to Bar
       Plaintiff from Bringing a Title VII Claim Seeking Punitive Damages

As noted, the September 22, 2020 Order found that "insufficient evidence exist[ed] in the

record to determine the parties' intent."  *Barker*, 2020 WL 5645092, at *9.  The Court observed,

for example, that "Plaintiff allege[d] in his papers that he rejected a larger settlement amount to

preserve his right to sue in federal court, but his statement [was] unsworn and he provide[d] no

evidence or specifics regarding the earlier amount."  *Id.*

Since the Court issued that Order, the parties have submitted evidence to support their

positions with respect to the scope of the release provision.  Plaintiff submitted a sworn affidavit

asserting that he "rejected [an initial settlement] offer[] because [he] wanted to preserve [his] rights

under Title VII in Federal Court for racial discrimination."  (Pl. Aff., Dkt. 40, at ECF 2—

SEALED.)  The affidavit further claims that "[t]his is why punitive damages were not listed in the

agreement."  (*Id.* at ECF 3—SEALED.)

Plaintiff also submitted an affidavit from the attorney who represented him during

settlement negotiations.  According to the affidavit, "[Plaintiff] was adamant about preserving his

rights to pursue his claims for punitive damages under Title VII in Federal Court since it was not

available to him in SDHR."  (*Id.* at ECF 76—SEALED.)  Further, Plaintiff's former attorney

"expressed to [Defense Counsel] that [Plaintiff] ha[d] not, and [would] not, change his position on

preserving his rights to pursue punitive damages in Federal Court."  (*Id.* at ECF 77—SEALED.)

Although "an offer was made, for ███████████████, to settle all matters/claims of

[Plaintiff]," Plaintiff "rejected it immediately because he wanted to preserve his rights to pursue

his Title VII issues in Federal Court."  (*Id.*)[8]  After Plaintiff rejected Defendant's settlement offer,

---

[8] Defendant argues in a footnote that the affidavit from Plaintiff's former counsel "contains
both irrelevant and inadmissible material – including hearsay and double hearsay statements – and
should not be considered by the Court."  (Def. Br., Dkt. 46, at 17 n.8.)  But there are relevant

24

the parties negotiated the inclusion of the reservation clause, which provides that Plaintiff intended to "expressly reserve[] any rights he may have to pursue any claims of racial discrimination and related issues not addressed *within the purview and jurisdiction of the SDHR*," and that the Settlement Agreement "does not in any way, preclude or inhibit [Plaintiff] from pursuing whatever *remedies* that may be available to him in Federal Court, regarding said claims not addressed in the SDHR Hearing." *Barker*, 2020 WL 5645092, at *8–9 (quoting Settlement Agreement, Dkt. 31, at ECF 49 (emphasis added)).

Defendant contends that the release provision "control[s] over the [reservation clause]," and that the reservation clause "cannot create any right beyond those arising from the operative terms of the [Settlement Agreement]." (Def. Br., Dkt. 46, at 13 (quoting *Abraham Zion Corp. v. Lebow*, 761 F.2d 93, 103 (2d Cir. 1985).) But, as Defendant acknowledges, "a recital"—such as the reservation clause—still "can be instructive as to the parties' intent in drafting the contract." (*Id.* (quoting *Gruppo, Levey & Co. v. ICOM Info. & Commc'ns, Inc.*, No. 01-CV-8922 (JFK), 2003 WL 21511943, at *7 (S.D.N.Y. July 1, 2003))); *see also Aramony v. United Way of Am.*, 254 F.3d 403, 413 (2d Cir. 2001) (noting that "a statement in a 'whereas' clause may be useful in interpreting an ambiguous operative clause in a contract" (citations and quotations omitted)).

---

portions of the affidavit that are not hearsay. For example, the statements that "[Plaintiff] was adamant about preserving his claims for punitive damages under Title VII in Federal Court" (Pl. Aff., Dkt. 40, at ECF 76—SEALED) and rejected a "█████████████" settlement offer that did not include that right (*id.* at ECF 77—SEALED), concern Plaintiff's behaviors and actions, not specific statements. And even if these were statements, Plaintiff could introduce Defendant's offer of a "█████████████" settlement as a statement of a party opponent "made by the party's agent or employee on a matter within the scope of that relationship and while it existed," *see* Fed. R. Evid. 801(d)(2)(D), and his own "surrounding statements providing essential context [could] also be considered," *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 420 (S.D.N.Y. 2011) (citing, among others, *United States v. Dupre*, 462 F.3d 131, 136–137 (2d Cir. 2006)).

Defendant also notes that "the [reservation] clause that Plaintiff's Counsel drafted does not mention Title VII or punitive damages, nor does it provide that Plaintiff can pursue any claims or relief based on the same allegations that were asserted in the SDHR Proceeding." (Def. Br., Dkt. 46, at 18.) But the language expressing intent to reserve "any claims of racial discrimination and related issues not addressed within the *purview and jurisdiction* of the SDHR," with the specific inclusion of "whatever *remedies* [] may be available to [Plaintiff] *in Federal Court*," *Barker*, 2020 WL 5645092, at *8 (quoting Settlement Agreement, Dkt. 31 at ECF 49 (emphasis added)), is at least evidence that the parties intended to allow Plaintiff to reserve the right to sue under Title VII seeking punitive damages—a remedy available in federal court but outside the purview of the SDHR, *see id.* at *7 ("[T]he NYSDHR lacked authority to award punitive damages based on employment discrimination." (citations omitted)).[9]

Defendant next argues that "the varying interpretations provided by Plaintiff and his former counsel confirm that neither Plaintiff, nor his counsel could clearly articulate the nature of the unrelated claims he was purportedly intending to reserve." (Def. Br., Dkt. 46, at 17.) Defendant is right that Plaintiff's affidavit speaks in terms of "preserv[ing] [his] rights under Title VII" generally (Pl. Aff., Dkt. 40, at ECF 2—SEALED), whereas his former attorney speaks of "preserving his rights to pursue *punitive damages* in Federal Court" (*id.* at ECF 77—SEALED (emphasis added)). But Plaintiff is proceeding *pro se*, and the Court does not take his general reference to reserving a federal discrimination claim as strong evidence that he intended to forgo a claim for punitive damages specifically. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

---

[9] Defendant notes that "the [reservation of rights] clause only reserves rights that Plaintiff 'may have,' it does not create any rights on its own." (Def. Br., Dkt. 46, at 14.) Defendant again contends that "Plaintiff has no right to assert a standalone claim for punitive damages." (*Id.*) For the reasons discussed, however, the Court rejects this argument.

26

curiam) ("A document filed *pro se* is to be liberally construed . . . ." (citations and quotations omitted)); *see also McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004). That Plaintiff's former attorney articulated Plaintiff's desire to reserve the right to seek punitive damages suggests that Plaintiff wished to reserve that right and conveyed that desire, through counsel, to Defendant. Whether or not Plaintiff fully understood the nuances of a claim seeking only punitive damages, his desire to preserve the right to sue in federal court under Title VII suggests his counsel sought to preserve that right in settlement negotiations, even if only through a claim limited to punitive damages. That the parties agreed to a lower amount suggests that Defendant offered Plaintiff that right as consideration.

Next, Defendant points to the affirmations from its counsel that "Plaintiff's counsel did not represent that Plaintiff intended to reserve a right to bring a 'claim' for punitive damages under Title VII based on the same allegations asserted by Plaintiff in the SDHR Proceeding" (*see* Declaration of Melissa C. Rodriguez, Dkt. 47, ¶ 5), and that "[a]t no time did Plaintiff's Counsel ever express to [defense counsel] that Plaintiff intended to reserve a right to assert a claim for punitive damages under Title VII based on the same facts and allegations that Plaintiff asserted in the SDHR Proceeding" (*id.* ¶ 15). But this creates a dispute about the content of Plaintiff's negotiations with Defendant. At this stage, the Court must construe any such disputed facts in the light most favorable to Plaintiff. *See Adickes*, 398 U.S. at 157–59.

Finally, Defendant contends that "[i]f [the] parties had only intended to settle Plaintiff's NYSHRL claim, there would have been no need for a separate settlement agreement with a broader release." (Def. Br., Dkt. 46, at 18.) But the Court has already recognized that the Settlement Agreement released more than just potential NYSHRL claims. That is why it dismissed Plaintiff's claim under Section 1981, and his claim under Title VII insofar as it sought compensatory

damages. *See Barker*, 2020 WL 5645092, at *6–7. Just because the release provision is not limited to NYSHRL claims does not mean it precludes all conceivable claims under other statutes. Further, as noted, had Defendant intended to preclude Plaintiff from seeking punitive damages under Title VII, it could have done so expressly in the release and waiver clause. Allowing Plaintiff to preserve this right logically would have been viewed as consideration for Plaintiff that justified a lower settlement amount.

Given the language of the Settlement Agreement and the evidence both parties have submitted, the Court cannot conclude that "the parties' intended meaning of the [Settlement Agreement was] so one-sided that no reasonable person could" find that Plaintiff reserved the right to sue under Title VII seeking punitive damages, or that there is "no extrinsic evidence that would support a resolution of the ambiguities in [Plaintiff's] favor." *See N.Y. Marine & Gen. Ins. Co.*, 599 F.3d at 115 (citation, quotations, and brackets omitted).

## CONCLUSION

For the foregoing reasons, the Court denies Defendant's renewed motion for summary judgment and concludes that a genuine issue of material fact remains concerning whether Plaintiff reserved the right to sue under Title VII seeking punitive damages as a remedy. Such determinations are law of the case and are not to be revisited in further briefing. By October 15, 2021, Defendant may propose a briefing schedule on the other issues it raised in its pre-motion conference letter. (*See* Def. Br., Dkt. 46, at 18 n.9.).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2021
        Brooklyn, New York