UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RONALD BARKER,

                Plaintiff,        **MEMORANDUM & ORDER**

- against -        19-CV-2710 (PKC) (SMG)

ARAMARK UNIFORM & CAREER
APPAREL, LLC,

                Defendant.
-------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

      Plaintiff Ronald Barker, proceeding *pro se*, bring this action against his former employer, Defendant Aramark Uniform & Career Apparel, LLC ("Aramark"), alleging violations of 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, Defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

**I.    Relevant Facts[2]**

      Plaintiff, a Black male, began working for Defendant, an industrial laundry and uniform rental business, in 2015 as a "route salesman/truck driver." (Dkt. 1, at 12[3], 71.)[4]  In the summer

---

[1] The Court assumes the parties' familiarity with the underlying allegations of this case and, therefore, will only recite the facts relevant to resolve the instant motion.

[2] For purposes of this motion, the Court accepts as true all non-conclusory allegations in the Complaint. *Rosenblum v. Thomson Reuters (Markets) LLC*, 984 F. Supp. 2d 141, 145 (S.D.N.Y. 2013).

[3] Page numbers refer to the pagination generated by the court's CM/ECF docketing system, and not the document's internal pagination.

[4] Plaintiff's complaint in this action consists of the Court's standard *pro se* complaint form and 228 pages of attached exhibits, which include, *inter alia*, Plaintiff's original NYSDHR

1

of 2016, Defendant restructured its drivers' routes. (*Id.* at 69.) According to Plaintiff, the purpose of the restructuring was to "level the playing field" because white drivers were, at the time, being paid more than Black drivers. (*Id.* at 14, 71.) The white drivers protested the restructuring and filed an (ultimately unsuccessful) grievance with the Laundry, Distribution & Food Service Joint Board, Workers United Union (the "Union"), which has a collective bargaining agreement ("CBA") with Defendant. (*Id.* at 14; *see also id.* at 45.)

One of the white drivers, Brian Calhoun, subsequently complained about the re-routing to Dave Gambardella, an Aramark district manager who is also white. (*Id.*) In response to Calhoun's complaint, Gambardella "took it upon [him]self and took [thirteen] stops off [Plaintiff's route]," giving seven of them to Calhoun. (*Id.* at 14, 31-32, 45, 71-72.)[5] When Plaintiff spoke with Gambardella about the stop-reassignment issue, Gambardella stated, "this is how we look after our own," and then employed "stereotypical 'Black phrases,'" such as "you know what I'm saying homie?" (*Id.* at 14, 71.) According to Plaintiff, "[t]hey did not touch [any]. . . white driver's route. Only mine." (*Id.* at 14.)

---

complaint and the NYSDHR's Final Investigation Report and Basis of Determination. Plaintiff did not include a separate statement of facts with his complaint, but instead wrote "see attached files from New York State Division of Human Rights." (*See* Dkt. 1, at 5.) Accordingly, in describing the allegations in the Complaint, the Court draws from Plaintiff's NYSDHR complaint and the NYSDHR's Final Investigation Report. *See Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) ("It is well established that a pleading is deemed to include any written instrument that is attached to it as an exhibit or is incorporated in it by reference." (citations and quotations omitted)).

[5] Plaintiff's co-workers, Jermaine Wheeler and Darrien Miller, corroborate that Gambardella "took stops from [Plaintiff] and gave them to other drivers." (Dkt. 1, at 72.) On unidentified dates, Wheeler also "overheard comments from . . . Gambardella mocking black people by making comments like 'My nigga, my nigga'," and Miller overheard Gambardella "call someone a monkey." (*Id.*)

2

Plaintiff subsequently raised the issue of the stop reassignment with his assistant general manager and general manager, but "they refused to do anything about it." (*Id.* at 14.) He also filed a grievance with the Union under the CBA based on the removal of the stops. (*Id.* at 21, 71-72.) Ultimately, Gambardella did not give Plaintiff the stop assignments back, even though Defendant's policies require that "the company must compensate him for stops or give him replacement stops if stops are taken away from him." (*Id.* at 71.) According to Plaintiff, Defendant neither compensated him for the stops taken nor gave him replacement stops. As a result of the stop reassignment, Calhoun "was and still [is] the highest pa[id] driver there," but Plaintiff's wages declined. (*Id*. at 21; *see id.* at 20 ("[Barker's] wages had continued to decline after the rerouting.").) On August 10, 2017, Plaintiff quit working for Defendant, stating that he "had to leave the company" because he "could not support [his] family with the money [he] was making." (*Id.* at 24; *see also id.* at 32, 69.)

## II.     Procedural History

On January 24, 2018, Plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the New York State Division for Human Rights ("NYSDHR"). (*Id.* at 6, 11.)

On July 3, 2018, the NYSDHR issued a final investigation report concluding that there was "probable cause to support the allegations of the complaint." (*Id.* at 73 ("Complainant's allegations of discrimination appear to support a continuing violation. . . . The Division interviewed two witnesses and the complainant, the Division learned that the manager Dave Gambardella frequently made racially-charged derogatory comments.").) On February 14, 2019, the EEOC issued Plaintiff a Right to Sue letter. (*Id.* at 6.)

On May 8, 2019, Plaintiff filed the operative complaint in this action alleging violations of 42 U.S.C. § 1981, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), New York State Executive Law §§ 296

3

*et seq.* ("NYSHRL"), and the New York City Administrative Code §§ 8-101 *et seq.* and § 8-107(15) ("NYCHRL").

On July 26, 2019, Defendant sought, *inter alia*, leave to file a motion to dismiss under Rule 12(b)(6) on the grounds that Plaintiff's claims were "barred by a release of claims" contained in an April 2019 settlement agreement (the "Settlement Agreement") between the parties. (Dkt. 10, at 1.) The Court directed the parties to conduct discovery and then brief, as a summary judgment motion, the issue of whether Plaintiff was estopped from asserting his claims based on the Settlement Agreement. (11/06/19 Order.) On September 22, 2020, the Court (i) granted summary judgment to Defendant on Plaintiff's claims "under 42 U.S.C. § 1981, . . . the NYCHRL, [and the] NYSHRL" in their entirety as barred by the Settlement Agreement; (ii) granted summary judgment to Defendant on Plaintiff's claims under Title VII for compensatory damages as barred by the Settlement Agreement; and (iii) denied summary judgment to Defendant "as to Plaintiff's Title VII claim for punitive damages." (Dkt. 39, at 12-13, 19-20.) The Court also permitted limited discovery and additional briefing "regarding any reservation of Plaintiff's right to bring a claim for punitive damages under Title VII in federal court." (Dkt. 55, at 7-8.)

On December 7, 2020, Defendant renewed its motion for summary judgment as to Plaintiff's Title VII claim for punitive damages "in light of . . . additional evidence" concerning the parties' "negotiations over the Settlement Agreement." (*Id.*) On September 30, 2021, the Court denied Defendant's renewed motion for summary judgment and concluded that "a genuine issue of material fact remains concerning whether Plaintiff reserved the right [under the Settlement Agreement] to sue under Title VII seeking punitive damages as a remedy." (*Id.* at 28.)

4

Because there has yet to be a motion challenging the sufficiency of Plaintiff's Title VII claims, as alleged in the Complaint, Defendant filed the instant motion to dismiss, which was fully briefed as of January 14, 2021.  (Dkt. 60.)

## LEGAL STANDARDS

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).  "In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

"A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).  District courts must interpret *pro se* complaints "to raise the strongest claims that it suggests." *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (cleaned up).

## DISCUSSION

### I. Defendant's Motion to Dismiss is Granted as to Plaintiff's Employment Discrimination Claim.

Under Title VII, "a plaintiff in New York must file a complaint with the EEOC within 300 days of a discriminatory act." *Richard v. New York City Dep't of Educ.*, No. 16-CV-957, 2022 WL 4280561, at *12 (E.D.N.Y. Sept. 15, 2022). Conduct that occurred more than 300 days prior to the filing of an EEOC charge is "properly dismissed . . . as untimely." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004). One exception to this rule is the "continuing violation exception," which permits courts to consider claims that "the discriminatory acts were part of a continuing policy and practice of prohibited discrimination, where one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Lugo v. City of New York*, 518 F. App'x 28, 29 (2d Cir. 2013). However, "ongoing harms flowing from discrete events do not trigger the application of the continuing violation doctrine." *Corsini v. City of New York*, No. 20-CV-5459, 2021 WL 5999631, at *10 (E.D.N.Y. Dec. 20, 2021).

In this case, Plaintiff alleges that, in 2016, Gambardella took stops from Plaintiff's route to give them to a white co-worker and, as a result, Plaintiff's wages declined. (Dkt. 1, at 20-21.) Under Title VII, Gambardella's reassignment of Plaintiff's stops constituted a "discrete act" of discrimination, triggering the 300-day period in which to file a charge with the EEOC. *Roberts v. Sage Corp.*, No. 20-CV-365, 2021 WL 3617670, at *4 (N.D.N.Y. Aug. 16, 2021) (holding "an undesirable removal from a specific assignment or one-time transfer to a new unit . . . are all discrete acts"). If Plaintiff was required to file an EEOC complaint regarding the 2016 event within 300 days, his claim would be time-barred because he did not file his EEOC claim until January 2018. The question then becomes whether the continuing violation exception applies to the

6

ongoing loss of wages as a result of Gambardella's actions, in which case, his claim would be timely as he stopped working for Defendant on August 10, 2017.

The Court finds that the continuing violation exception does not apply in this case as a matter of law. The Second Circuit has held that a continuing violation "is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer." *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997); *see also Roberts*, 2021 WL 3617670 (N.D.N.Y. Aug. 16, 2021) (holding "an undesirable removal from a specific assignment or one-time transfer to a new unit . . . are all discrete acts that are incapable of forming the basis of a continuing violation for a discrimination or retaliation claim").

Therefore, Plaintiff's claim for punitive damages based on Title VII discrimination is time-barred, and Defendant's motion to dismiss is granted as to this claim.

## II. Defendant's Motion to Dismiss is Denied as to Plaintiff's Constructive Discharge Claim.

An employee is constructively discharged "when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily." *Pryor v. Jaffe & Asher, LLP*, 992 F. Supp. 2d 252, 261–62 (S.D.N.Y. 2014). The inquiry is an objective one: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" *Id.* In order to state a constructive discharge claim based on a pay reduction, Plaintiff must demonstrate "[a] reduction in pay combined with the elimination of substantial employment benefits . . . , combined with evidence of deliberate intent." *Hogan v. Metromail*, 107 F. Supp. 2d 459, 469 (S.D.N.Y. 2000).

In this case, Plaintiff alleges that he was constructively discharged by Defendant because he "could not support [his] family with the money [he] was making" as a result of the stop reassignment. (Dkt. 1, at 24; *see also id.* at 32, 69.) Construing the allegations liberally, as the

7

Court must, Defendant's motion to dismiss is denied. Here, Plaintiff not only alleges that his pay was reduced because he was "left with less-paid stops," but that he was also denied the benefit of commissions from "loss-and-ruin pay." (*Id.* at 71 ("Complainant stated that employees get 10% [loss-and-ruin pay], which is money collected from damages charges and given to employees in addition to their base pay.")) Moreover, Plaintiff has more than met his "minimal burden of showing facts suggesting an inference of discriminatory motivation" in reassigning his route stops. *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015). Specifically, Plaintiff alleges that in explaining why he reassigned Plaintiff's stops, Gambardella stated, "this is how we look after our own," and then employed "stereotypical 'Black phrases,'" such as "you know what I'm saying homie?" (Dkt. 1, at 14, 71.) Words like those used by Gambardella "may be examples of 'dog-whistle racism,' and 'Title VII can hear racism sung in the whistle register.'" *Brockman v. NAES Corp.*, No. 3:19-CV-00006, 2021 WL 863471, at *4 (D. Conn. Mar. 8, 2021) (quoting *Lloyd v. Holder*, 2013 WL 6667531, at *9 (S.D.N.Y. 2013)); *see also Abrasam v. William Paterson Coll. of N.J.*, 260 F.3d 265, 278 (3d Cir. 2001) ("even the use of 'code words' such as 'all of you' and 'one of them' could be sufficient evidence from which a jury could find an intent to discriminate"). Therefore, the Court finds that Plaintiff has stated a constructive discharge claim under Title VII.[6] Defendant's motion to dismiss is denied.[7]

---

[6] Unlike Plaintiff's employment discrimination claim, this claim is not time-barred, since the adverse action occurred when Plaintiff stopped working for Defendant in August 2017.

[7] The Court rejects Defendant's argument that the fact Plaintiff continued to work for nearly a year after the stop reassignment "is sufficient to undermine a claim that working conditions were intolerable." (Dkt. 61, at 8.) As Plaintiff has alleged, "he stayed at his job for a year because he was led to believe his grievance would be addressed but it never was, and he had to find another job." (Dkt. 1, at 71.) Had he not attempted the grievance process, Defendant would instead be arguing that his claim should be dismissed for "fail[ure] to explore alternative avenues offered by [his] employer before concluding that resignation is the only option." *Livingston v. City of New York*, 563 F. Supp. 3d 201, 235 (S.D.N.Y. 2021).

### III. Defendant's Motion to Dismiss is Denied as to Plaintiff's Request for Punitive Damages.

Defendant also moves to dismiss Plaintiff's prayer for punitive damages. This portion of Defendant's motion is denied as premature. *See, e.g.*, *Belyea v. City of Glen Cove*, No. 20-CV-5675, 2022 WL 3586559, at *30 (E.D.N.Y. Aug. 22, 2022) ("Because punitive damages are a form of damages, and not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature.") (collecting cases). Therefore, the Court denies Defendant's motion with respect to Plaintiff's punitive damages claim.

### CONCLUSION

For the reasons explained above, Defendant's motion to dismiss is granted in part and denied in part. The Court grants Defendant's motion to dismiss as to Plaintiff's Title VII employment discrimination claim but denies Defendant's motion as to Plaintiff's Title VII constructive discharge claim and claim for punitive damages.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2022
       Brooklyn, New York

9